UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION


VICKY A. SEABAUGH,                    )
                                      )
                 Plaintiff,           )
                                      )
          v.                          )        No.  1:08CV132 TIA
                                      )
MICHAEL ASTRUE, Commissioner          )
of Social Security,                   )
                                      )
                 Defendant.           )


**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration.  The

parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**I.      Procedural History**

On December 2, 2005, Claimant filed an application for Supplemental Security Income

payments pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq. (Tr. 113-

16) and an application for Disability Insurance Benefits pursuant to Title II of the Social Security

Act, 42 U.S.C. §§ 401, et seq. (Tr. 117-19).[1]  In the Disability Report Adult completed by

Claimant and filed in conjunction with the application, Claimant stated that her disability began on

October 1, 2004, due to the condition of her back, left hip and arms.  (Tr. 132-38).  On initial

consideration, the Social Security Administration denied Claimant's claims for benefits.  (Tr. 68-

72).  Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 106).  On

_____

[1]"Tr." refers to the page of the administrative record filed by Defendant with its Answer
(Docket No. 10/filed November 17, 2008).

June 8, 2007, a hearing was held before an ALJ.  (Tr. 23-64).  Claimant testified and was

represented by counsel.  (Id.).  Vocational Expert Jeffrey Magrowski and Medical Expert Morris

Alex also testified at the hearing.  (Tr. 26-27, 53-41, 107-12).  Thereafter, on July 20, 2007, the

ALJ issued a decision denying Claimant's claims for benefits.  (Tr. 8-20).  After considering the

request for review, the Appeals Council found no basis for changing the ALJ's decision and

denied Claimant's request for review of the ALJ's decision on June 20, 2008.  (Tr. 1-3).  The

ALJ's determination thus stands as the final decision of the Commissioner.  42 U.S.C. § 405(g).

## II.    Evidence Before the ALJ

### A.  Hearing on June 8, 2007

#### 1.  Claimant's Testimony

At the hearing on June 8, 2007, Claimant testified in response to questions posed

by the ALJ and counsel.  (Tr. 27-53).  At the  time of the hearing, Claimant was forty-six years of

age.  (Tr. 27).  Claimant stands at five feet six inches and weighs approximately 160 pounds.  (Tr.

27).  Claimant is right-handed.  (Tr. 52).  Claimant completed the eighth grade and has not

received a GED.  (Tr. 28).  Claimant is separated from her husband.  (Tr. 47).  Claimant testified

that she does not have any private health insurance.  (Tr. 32, 47).  Claimant has been denied

Medicaid but did not contest the denial.  (Tr. 48).  Claimant receives food stamps.  (Tr. 49).

During her testimony, Claimant requested to stand up for a minute.  (Tr. 36).

Claimant last worked in 2004 as an assembly line worker but she stopped working because

she could no longer keep up with the line work and required help lifting parts.  (Tr. 29-30).

Claimant worked for a couple of years at Retro Sportswear as a seam buster ironing open the

seams on men's dress slacks.  (Tr. 30).   Claimant worked as a cook at Bo's Barbecue in

Sikeston.  (Tr. 30).  While working at Featherlight painting lamps with a spray gun, Claimant injured her back.  (Tr. 30-31).  The last jobs Claimant held required her to stand.  (Tr. 40).  Since hurting her back, Claimant has not worked in a position allowing her to sit at times while working.  (Tr. 40).

Claimant testified that her lower back and hip problems are her most serious health problems limiting her, the area she injured while working at Featherlight. (Tr. 31).  Claimant has been treated with therapy, muscle relaxers, and prescription pain pills.  (Tr. 32).  Dr. Dale Lockhart, a family doctor, has prescribed muscle relaxers, Percocet, and Darvocet as treatment of Claimant's lower back pain.  (Tr.32).  Claimant reported having two MRIs with the most recent showing arthritis and degenerative disc disease.  (Tr. 33).  Claimant experiences relief of her back pain pressure by sitting on her couch and leaning forward.  (Tr. 34).  Claimant testified that sometimes she experiences extreme back pain lasting ten days and she cannot stand up straight. (Tr. 34-35).    Claimant has difficulty sleeping through the night due to her discomfort.  (Tr. 34). In December, 2006, Claimant received treatment in the emergency room for her severe back pain. (Tr. 36).  Claimant has left hip pain similar to her lower back pain.  (Tr. 44).  Claimant testified that she would rate her hip pain at a level six to seven with the pain level increasing to a ten when she is down for ten days.  (Tr. 46-47).  Taking medication reduces Claimant's pain level to a four. (Tr. 52).  Claimant has a ten-day episode every two months.  (Tr. 47).

Claimant also experiences pain in her shoulders and sometimes her shoulders lock up.  (Tr. 36-37).  The medication prescribed to reduce the inflammation helps with her shoulder pain.  (Tr. 37-38).  Claimant testified that she did not have the $372 to receive treatment by the pain specialist.  (Tr. 38).  Claimant received physical therapy treatment in 2000 after injuring her back.

(Tr. 42). Claimant testified that the exercises given to her during treatment aggravated her pain and so she stopped doing the exercises. (Tr. 42-43). No doctor has ever recommended that Claimant wear a back brace. (Tr. 46). Claimant's family helps pay for her medical treatment and household bills. (Tr. 49).

Claimant testified that she does not know how long she comfortably stand for before she needs to sit down. (Tr. 38-39). Claimant can lift a gallon of milk and carry the milk inside but she is not comfortable lifting anything heavier than a gallon of milk. (Tr. 39). Claimant's sister-in-law usually takes her shopping and a neighbor usually carries the groceries inside the house. (Tr. 39). While grocery shopping, Claimant leans on the cart but after fifteen minutes, her hip and back pain force her to stop shopping. (Tr. 45). In order to pick something up off the ground, Claimant has to squat down and hold onto something so that she can get back up. (Tr. 40). Claimant can climb the four steps to enter her house but she cannot climb on ladders or ropes. When sitting, Claimant has to shift her weight and change positions from hip to hip. (Tr. 40). Claimant testified that she could walk fifty feet before the severe pain would force her to sit down. (Tr. 44). Claimant testified that her pain would prevent her from staying at a work site eight hours a day, five days a week. (Tr. 50-51).

As to her daily activities, Claimant testified that she can dust but that she cannot vacuum, sweep or mop. (Tr. 41). Claimant cooks her own meals such as cooking a pork chop or fixing a sandwich. Claimant does her own laundry. When shopping alone, Claimant goes to a store where someone carries out the groceries. (Tr. 41). Claimant can drive a vehicle but someone drove her to the hearing so that she could sit forward. (Tr. 42). To sleep at night, Claimant reclines on her sides with her knees pulled up with a pillow between her legs and one behind her

back.  (Tr. 45-46).

## 2.  Testimony of Medical Expert

Medical expert Dr. Morris Alex reviewed the medical evidence available to him and submitted at the hearing and listened to the evidence presented at the hearing.  (Tr. 53).  In response to the ALJ's question, Dr. Alex agreed that the record is devoid of any x-rays or a MRI of Claimant's hip.  (Tr. 54).  Dr. Alex testified that Dr. Duncan's treatment notes showed he ordered x-rays but the reports from the x-rays are not included.  (Tr. 54).  Based upon the evidence presented at the hearing and the medical evidence he reviewed prior to the hearing, Dr. Alex offered a medically certain diagnosis of Claimant's conditions as follows:

> The main thing would be 1.04A and from the evidence that's in the file, plus the report of the MRI, she does not meet that. 3F, page 3, on 1/19/06, when she was seen by Dr. [Burchett].  He found nothing in this neurological exams resupport any evidence of sciatica.  And he says that the hip joints were negative and the Neuro was negative.  Since the claimant does have complaints and that he had, and I realize that she doesn't have insurance.  It would be important to, to determine whether she has degenerative changes in that hip that's causing her pain, but from the evidence that, that's in the file, I can't make any assumption on that.

(Tr. 55).  Dr. Alex testified that a MRI of the lower back does not necessarily show the hips.  (Tr. 55).  Dr. Alex opined that the evidence in the record shows that Claimant has osteoarthritis causing discomfort and Dr. Burchett's examination does not support any limitations in the terms of functional capacity.  (Tr. 56).  Dr. Alex acknowledged that there is no way to determine how an individual perceives pain.  Dr. Alex opined that fifty percent of the people with degenerative disc disease experience pain while the other fifty percent do not.  (Tr. 56).  Dr. Alex opined that it would be a little unusual, approximately five percent of the individuals, to experience the level of pain as indicated by Claimant during her testimony.  (Tr. 57).  Dr. Alex opined that Dr. Burchett's

written findings do not support his opinion that Claimant appeared to be at least moderately impaired inasmuch as Dr. Burchett's evaluation of Claimant's shoulders, hips, and back revealed minimal involvement and the serological to be negative. (Tr. 57-58). Dr. Alex testified that he would not recommend a pain clinic evaluation of Claimant but he would recommend a psychological evaluation. (Tr. 58).

### 3. Testimony of Vocational Expert

Vocational Expert Jeffrey F. Magrowski, Ph.D., a certified rehabilitation counselor, testified in response to the ALJ's questions. (Tr. 59). Dr. Magrowski inquired about Claimant's vocational past regarding the job she had where she could sit down. (Tr. 59-60). Claimant testified that her position was called hook and eye. (Tr. 60).

Based on his review of the vocational data and the testimony presented at the hearing, Dr. Magrowski summarized Claimant's background, work experience and transferable skills taking into consideration her vocational capacity or potential to be as follows:

> Your Honor, she was born in 1960, so I believe she would be a younger individual. [S]he[*sic*] has a eight-grade education. She's done work in a factory. She's done some assembly work. These jobs are, according to the file, require lifting up to 50 pounds. It would be medium and unskilled. She had a job where she opened, ironed open seems and ran a hook and eye machine. I believe these jobs would be, even though she said it, the hook and the eye machine, it would be light if she had to use her hands.... And move controls. So it's be light, I believe they're unskilled. She was, for a short period of time, a cook at a restaurant. And these jobs typically are medium. They can be skilled. I'd probably put it more like a semi-skilled job. At fairly light she did some painting. The painting jobs can be light to medium. The sprayer would be more of a medium job, it'd be semi-skilled. The other jobs, I think, would be more of a light level and unskilled.

(Tr. 60-61). With respect to transferable skills, Dr. Magrowski opined that Claimant would not have any transferable skills except for the cooking work could transfer down to a short-order cook and such position is semi-skilled. (Tr. 61).

The ALJ asked Dr. Magrowski to assume that

> I find the claimant has degenerative disc disease of the lumbar spine and as a result of that, she's limited to work that is considered to be no more than medium in nature, that is lifting 50 pounds occasional, 25 pounds frequent and she is limited in that she cannot, more than occasionally, bend, stoop, crouch or crawl.
>
> And with regard to environment, she should not engage in work where she's concentratively exposed to cold temperatures or what would be considered to be violent, shaking and jolting of the body vibration-wise. So she certainly couldn't handle a jackhammer engaging the operation of a, some type of equipment that would shake and jolt the body, like a bad cold for instance. A low density hum, humming coming from a machine that she was operating, would it be tolerable? With those limitations in mind, could claimant return to all of her past work?

(Tr. 61-62). Dr. Magrowski opined that Claimant could not perform all of her past work but that she could perform the position of the ironer, a light and unskilled job, with 500 positions available locally and 40,000 positions available in the national economy. (Tr. 62). Likewise, Dr. Magrowski opined that Claimant could work painting at a light level with about 600 positions available in the state and over 25,000 positions available in the national economy.

Next, the ALJ asked Dr. Magrowski to assume that

> I find claimant limited exactly as in hypothetical number one, but now we're going to limit her down lifting-wise to 22 pounds occasional, 10 pounds frequent. Could she still perform those jobs that you cited in the first hypothetical?

(Tr. 62). Dr. Magrowski opined that Claimant could still perform the positions cited by the ALJ in the first hypothetical. (Tr. 62).

In the last hypothetical, the ALJ limited Claimant in the same manner but she could not "do more sedentary lifting and carrying, that is ten pounds occasional and smaller amounts more frequent." (Tr. 62). Dr. Magrowski opined that Claimant would not be able to perform her past jobs either how she performed them in the past or as the jobs are normally performed in the national economy. (Tr. 62).

Dr. Magrowski opined that Claimant could perform unskilled, sedentary assembly jobs with 1,500 such positions available in the state and 150,000 positions available in the national economy. (Tr. 62-63). Dr. Magrowski opined that the jobs discussed at the hearing and as described in the Dictionary of Occupational Titles would be consistent with successful performance and the limitations imposed in the various hypotheticals. (Tr. 63).

Claimant's counsel asked Dr. Magrowski whether the sedentary assembly jobs would be compatible if Claimant had to get up and move away from the assembly area. (Tr. 63). Dr. Magrowski indicated from a vocational standpoint, Claimant would not be able to perform those sedentary jobs. (Tr. 63).

### 4. Forms Completed by Claimant

In the Disability Report Adult, Claimant indicated that she was able to work after the date her conditions first bothered her because she was put on light duty and able to sit while painting the lamps instead of having to stand. (Tr. 133). In the Function Report Adult, Claimant listed her daily activities as dusting, doing a load of clothes, and watching television. (Tr. 139). Claimant indicated that she drives and does her own grocery shopping once a week. (Tr. 142). Claimant indicated that she tries to walk a lot but in the section covering her abilities, but she can only walk 25 to 35 feet before she has to rest. (Tr. 143-44).

### III. Medical Records

On February 7, 2000, Dr. Stephen Duncan saw Claimant for an initial consultation. (Tr. 165). Claimant reported low back pain and examination revealed sacral and lumbar subluxation with muscle spasm and tenderness to palpation. Dr. Duncan diagnosed Claimant with lumbodorsal strain with neuralgia. Dr. Duncan had x-rays taken and performed an adjustment and

ordered Claimant to return for treatment the following day.  (Tr. 165).

On November 28, 2001, Dr. Dale Lockhart at the Kennett Clinic treated Claimant.  (Tr. 182).  Claimant reported injuring her back at work two years earlier.  Dr. Lockhart noted that Claimant was able to ambulate and to stand on toe to heal.  Dr. Lockhart diagnosed Claimant with back pain and left scapula and prescribed Vicodin and Motrin.  (Tr. 182).  Claimant returned for a follow-up visit on December 5, 2001.  (Tr. 181).  Dr. Lockhart ordered an x-ray of her lower spine and referred Claimant to another doctor.  (Tr. 181).

On March 1, 2002, Dr. Stephen Duncan saw Claimant for an initial consultation.  (Tr. 165).  Claimant reported pain in neck and right shoulder pain.  Examination revealed thoracic and cervical subluxation with muscle spasm and tenderness to palpation.  Dr. Duncan diagnosed Claimant with cervical-brachial syndrome and performed x-rays and an adjustment.  In a follow-up visit on March 4, 2002, Dr. Duncan's initial diagnosis, cervical subluxation with muscle spasm, remained unchanged. Dr. Duncan performed another adjustment.  On March 15, 2002, Claimant reported pain in the neck and Dr. Duncan's diagnosis remained unchanged.  Dr. Duncan performed an adjustment and directed Claimant to return for treatment as needed.  (tr. 165).

Claimant returned on March 29, 2002, reporting pain in the neck and back.  (Tr. 165).  Examination revealed thoracic and cervical subluxation with muscle spasm and treated Claimant with an adjustment.  Dr. Duncan noted how Claimant is feeling better but she still is experiencing discomfort.  In a follow-up visit on April 19, 2002, Dr. Duncan's diagnosis remained unchanged and he treated Claimant with an adjustment.  (Tr. 165-66).  Dr. Duncan noted how Claimant is feeling better but that she still is experiencing discomfort.  (Tr. 166).

On June 3, 2002, Claimant reported low back pain, neck pain, and bilateral leg weakness.

- 9 -

(Tr. 166). Examination revealed sacral, lumbar and cervical subluxation with lumbosacral and muscle spasm and tenderness to palpation. Dr. Duncan diagnosed Claimant with lumbosacral with cervical neuralgia and performed x-rays and treated Claimant with an adjustment. The x-ray report showed Claimant's pelvic rotation had increased since the x-rays taken on February 7, 2000. (Tr. 169). Dr. Duncan noted how the x-ray showed small osteophytes present at the L4 and L3 vertebral levels. (Tr. 169). In a follow-up visits on June 5, 7, 11, and 14 2002, Claimant reported lower back pain and Dr. Duncan performed an adjustment as treatment. (Tr. 166). Dr. Duncan noted that his initial diagnosis had not changed and how Claimant is making slow but steady improvement. (Tr. 166).

On June 18, 2002, Claimant returned to Dr. Duncan for treatment. (Tr. 167). Claimant reported lower back pain. Examination revealed sacral, lumbar and thoracic subluxation with muscle soreness. Dr. Duncan noted how Claimant is making slow but steady improvement and treatment consisted of an adjustment. On June 21, 2002, Dr. Duncan noted how Claimant is feeling better but she still is experiencing discomfort. Claimant returned for treatment on June 26, 2002, and Dr. Duncan's initial diagnosis remained unchanged and he performed an adjustment as treatment. In the office visit on July 12, 2002, Dr. Duncan treated Claimant for her lower back pain and recommended that she return in two weeks for follow-up treatment. (Tr. 167).

On September 29, 2005, Claimant returned to the Kennett Clinic for treatment. (Tr. 179). Claimant reported back and hip pain. As treatment, Dr. Lockhart prescribed some medications. (Tr. 179).

On January 19, 2006, on referral by Disability Determinations, Dr. Barry Burchett completed an internal medicine examination in the context of Claimant's application for Social

Security Disability. (Tr. 185-88). Dr. Burchett noted that Claimant's current allegations of disability include pain in her back and hip. (Tr. 185). Claimant reported being injured while at work in 2000. Claimant reported her pain has continued since the injury almost constantly with exacerbations when she sits, lifts, carries, stands, or pulls. Claimant reported the pain in her back and left hip to be near continuous when she is standing. X-rays have revealed some arthritis. No doctor has ever recommended surgery. (Tr. 185). Claimant reported not taking any medications. (Tr. 186). Claimant smokes one and a half to two packs of cigarettes each day. Dr. Burchett noted that Claimant ambulates with a moderately antalgic gait which is not unsteady. (Tr. 186). Examination showed some moderate crepitus on the full range of motion. (Tr. 187). Examination of Claimant's cervical spine revealed no tenderness over the spinous processes and no evidence of parvertebral muscle spasm. Examination of the dorsolumbar spine showed moderate tenderness anterior to the anterior superior iliac spine area on the left. Straight leg raise test was negative in both the sitting and supine positions but Claimant experienced left hip pain with the maneuver. Dr. Burchett noted that Claimant has no hip joint tenderness, redness, warmth, swelling, or crepitus. (Tr. 187). Dr. Burchett noted that Claimant could perform tandem gait and squat without difficulty. (Tr. 188). Dr. Burchett examined Claimant and found Claimant to have a full range of motion in both of her shoulders, a full range of motion in both hips except the left hip on forward flexion, a full range of motion in her cervical spine, and a full range of motion in her lumbar spine except in the extension-flexion. (Tr. 189-90). In his impression, Dr. Burchett noted Claimant to have chronic hip pain, probable degenerative joint disease; chronic back pain, probable degenerative joint disease; mild degenerative joint disease of both shoulders; and GERD. (Tr. 188). Dr. Burchett opined that Claimant's "ability to perform work-related

activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects appears to be at least moderately impaired due to the objective findings described above." (Tr. 188).

On March 13, 2006, Claimant returned to the Kennett Clinic and reported back and hip pain and the examining doctor ordered a MRI. (Tr. 195). The MRI of Claimant's lumbar spine taken on March 15, 2006 showed degenerative disc disease of L4-5 and L5-S1. (Tr. 194).

On April 5, 2007, Claimant returned to the Kennett Clinic and reported back pain. (Tr. 192). The examining doctor noted Claimant to have limited range of motion in her lumbar spine and prescribed Medol, Flexeril, and Percocet. (Tr. 192). Claimant returned on August 7, 2006, and reported back and hip pain. (Tr. 193).

## IV.   The ALJ's Decision

The ALJ found that Claimant met the disability insured status requirements through December 31, 2009. (Tr. 13). The ALJ found that Claimant has not engaged in substantial gainful activity since October 1, 2004, the alleged onset date of disability. The ALJ found that the medical evidence establishes that Claimant has degenerative disc disease of the lumbar spine, hip strain, and shoulder strain, but no impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months and therefore Claimant does not have a severe impairment. (Tr. 13). The ALJ found that Claimant's subjective complaints, producing symptoms and limitations of sufficient severity to prevent the performance of any sustained work activity, are not credible. (Tr.15). In particular, the ALJ noted that Claimant's statements concerning the intensity, persistence and limiting effects of her alleged near constant back and hip pain are not entirely

credible. (Tr. 15). The ALJ further found that Claimant has the residual functional capacity to perform the physical exertional and nonexertional requirements of medium or light work or sedentary work with no exposure to violent vibration and only occasional bending, stooping, crouching, or crawling. The ALJ determined that there are no credible, medically-established or other nonexertional limitations, at least none precluding the significant and wide range of sedentary work. The ALJ determined that Claimant does retain the RFC to perform her past relevant work as an ironer or a painter. (Tr. 19).

Considering Claimant's impairments established in the instant case, and residual functional capacity, the ALJ opined based on the vocational expert testimony that Claimant can perform her past relevant work as an ironer and a painter and a significant and wide range of sedentary work (Tr. 19). The ALJ thus concluded that Claimant was not under a disability at any time through the date of his decision. (Tr. 19).

## V.    Discussion

In a  disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial

gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be

affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274

F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough

that a reasonable mind might accept it as adequate to support a decision." Id. The court's review

"is more than an examination of the record for the existence of substantial evidence in support of

the Commissioner's decision, we also take into account whatever in the record fairly detracts

from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will

affirm the Commissioner's decision as long as there is substantial evidence in the record to

support his findings, regardless of whether substantial evidence exists to support a different

conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative

record and consider:

1.      The credibility findings made by the ALJ.

2.      The claimant's vocational factors.

3.      The medical evidence from treating and consulting physicians.

4.      The claimant's subjective complaints relating to
        exertional and non-exertional activities and impairments.

5.      Any corroboration by third parties of the
        claimant's impairments.

6.      The testimony of vocational experts when required which
        is based upon a proper hypothetical question which sets forth the claimant's
        impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

To the extent that Claimant argues that the ALJ's decision is not supported by substantial

evidence on the record as a whole because the ALJ failed to properly evaluate her credibility and to include a stipulation that Claimant be allowed to occasionally stand and walk to alleviate her pain, the undersigned finds this argument to be without merit.

A.    Credibility Determination

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ erred in evaluating Claimant's credibility.

The determination of Claimant's credibility is for the Commissioner, and not the Court, to decide.  Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  The ALJ may not discredit Claimant's complaints of pain solely because they are unsupported by objective medical evidence.  O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003); Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted).  Instead, the ALJ must also consider all of the evidence relating to the Claimant's prior work record and third party observations as to;

1.    claimant's daily activities;

2.    duration, frequency and intensity of the pain;

3.    precipitating and aggravating factors;

4.    dosage, effectiveness and side effects of medication;

5.    functional restrictions.

Polaski, 739 F.2d at 1322.  The ALJ may disbelieve the claimant's subjective complaints "if there are inconsistencies in the evidence as a whole."  Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).

The undersigned recognizes that pain itself may be disabling.  See Loving v. Department

of Health & Human Servs., 16 F.3d 967, 970 (8th Cir. 1994). However, "the mere fact that working may cause pain or discomfort does not mandate a finding of disability." Jones, 86 F.3d at 826. "[T]he real issue is how severe the pain is." Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991)).

When determining a claimant's complaints of pain, the ALJ may disbelieve such complaints if there are inconsistencies in the evidence as a whole. Polaski, 739 F.2d at 1322. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); see also Johnson v. Secretary of Health and Human Servs., 872 F.2d 810, 813 (8th Cir. 1989). "An ALJ must do more than rely on the mere invocation of Polaski to insure safe passage for his or her decision through the course of appellate review." Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995). Where an ALJ explicitly considers the Polaski factors but then discredits a claimant's complaints for good reason, his decision should be upheld. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically. Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1966). The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000); see also Brown, 87 F.3d at 966. The ALJ's credibility findings are entitled to deference if the findings are supported by multiple valid reasons. See Goff v. Barnhart, 421 F.3d 785, 791-92 (8th Cir. 2005); Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (if ALJ explicitly discredits claimant and gives good reasons for doing so, court will normally defer to credibility determination).

In his decision the ALJ thoroughly discussed the medical evidence of record, the lack of ongoing medical evidence corroborating Claimant's subjective complaints of functional limitations, the lack of prescription pain medications, Claimant's activities, and history of low earnings. See Gray v. Apfel, 192 F.3d 799, 803-04 (8th Cir. 1999) (ALJ properly discredited claimant's subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and extensive daily activities). The ALJ then addressed several inconsistencies in the record to support his conclusion that Claimant's complaints were not credible.

Specifically, the ALJ noted that no treating physician in any treatment notes stated that Claimant was disabled or unable to work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). The lack of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints). Further, the ALJ noted that despite her allegations of persistent pain, Claimant has not received ongoing medical attention or treatment for her lower back pain.

In addition, the ALJ noted that no physician had ever made any medically necessary

restrictions, restrictions on her daily activities, or functional limitations. Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir. 1996) (lack of significant medical restrictions imposed by treating physicians supported the ALJ's decision of no disability). Indeed, in his treatment notes Dr. Duncan noted how Claimant was feeling although still experiencing discomfort. Likewise, the ALJ noted how the medical record is devoid of any evidence showing that Claimant's condition has deteriorated or required aggressive medical treatment. Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek aggressive medical care is not suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993)( lack of ongoing treatment is inconsistent with complaints of disabling condition). The ALJ further noted that Claimant takes over-the-counter medications for pain, not narcotic pain relievers. See Masterson v. Barnhart, 363 F.3d 731, 739 (8th Cir. 2004) (ALJ properly considered that claimant did not take narcotic pain medication in finding her complaint of extreme pain not credible); Rankin v. Apfel, 195 F.3d 427, 430 (8th Cir. 1999); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (holding that pain which can be remedied or controlled with over-the-counter analgesics normally will not support a finding of disability).

Claimant argues that the ALJ's adverse credibility determination is flawed inasmuch as he erroneously noted Claimant lack of pain medication as a factor when making his credibility determination. The undersigned agrees that the evidence of the record support's Claimant's argument that she had been prescribed prescription pain medications by some doctors. Nonetheless, the record also shows that Claimant reported not taking any medications to Dr. Barry Burchett during internal medicine examination in the context of Claimant's application for Social Security Disability on January 19, 2006. To the extent the ALJ's credibility analysis was

deficient by his consideration of this incorrect factor, there nevertheless existed additional

significant inconsistencies in the record to detract from Claimant's credibility, as set out above.

Inasmuch as the ALJ's conclusion as to Claimant's credibility continues to be supported by

substantial evidence on the record, any error in his consideration of the lack of pain medication

prescribed to Claimant does not require the determination to be set aside.  See Reynolds . Chater,

82 F.3d 254, 258 (8th Cir. 1996).

The ALJ considered Claimant's allegation that she needs to occasionally stand and walk to

alleviate her pain and found it not supported by medical findings or opinions and thus not credible.

Indeed, the record shows that there is no objective medical evidence substantiating Claimant's

allegation.  Further, the record shows Claimant never reported to any doctors her need to

occasionally stand and walk to alleviate her pain.  Likewise, no doctor determined Claimant

needed to occasionally stand and walk to alleviate her pain as a medical necessity.  See Craig v.

Chater, 943 F. Supp. 1184, 1188 (W.D. Mo. 1996); Cf.  Harris v. Barnhart, 356 F.3d 936, 930

(8th Cir. 2004) (whether there is a need to lie down is a medical question requiring medical

evidence; record did not contain any evidence that medical condition required claimant to lie

down for hours each day).  These observations are supported by substantial evidence on the

record as a whole.

Finally, the ALJ noted that Claimant's work history and earnings record severely detract

from her credibility regarding the severity of her impairments alleged and her overall motivation to

work versus motivation for benefits inasmuch as her record documents poor and overall

inconsistent earnings.  A poor work history lessens a Claimant's credibility.  Woolf, 3 F.3d at

1214; see also Pearsall, 274 F.3d at 1218 (a poor work history "may indicate a lack of motivation

to work, rather than a lack of ability."). Further, Claimant had been able to work a number of years after her work related injury despite her alleged lower back pain. See Comstock, 91 F.3d 1147 (low earnings and significant breaks in employment cast doubt on complaints of disabling symptoms).

The undersigned finds Claimant's argument flawed inasmuch as the instant medical record does not support her claim of disability. The medical record is devoid of any physician finding Claimant disabled or limited in her ability to function. The medical records show that Claimant's back problems started in 2000 after an injury at work, but she returned to work and continued to work until 2004. Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that his suggested impairments were not as severe as he alleged); Weber v. Barnhart, 348 F.3d 723, 725 (8th Cir. 2003) (noting that claimant left her job due to lack of transportation, not due to disability).

As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied relief solely on the lack of objective medical evidence to support his finding that Claimant is not disabled. Instead, the ALJ considered all the evidence relating to Claimant's subjective complaints, including the various factors as required by Polaski, and determined Claimant's allegations not to be credible. Although the ALJ did not explicitly discuss each Polaski factor in making his credibility determination, a reading of the decision in its entirety shows the ALJ to have acknowledged and considered the factors before discounting Claimant's subjective complaints. See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). Inasmuch as the ALJ

expressly considered Claimant's credibility and noted numerous inconsistencies in the record as a whole, and the ALJ's determination is supported by substantial evidence, such determination should not be disturbed by this Court.  Id.; Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996). Because the ALJ gave multiple valid reasons for finding Claimant's subjective complaints not entirely credible, the undersigned defers to the ALJ's credibility findings.  See Guilliams v. Barnhart, 393 F.3d 798, 801(8th Cir. 2005).

The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before him and set out the inconsistencies detracting from Claimant's credibility.  The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole.  Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  The ALJ pointed out inconsistencies in the record that tended to militate against the Claimant's credibility.  See Guilliams, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is supported by good reasons and substantial evidence).  Those included Claimant's minimal, ongoing treatment for pain, her lack of functional restrictions by any physicians, her daily activities, and history of low earnings.  The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination.  See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006);  Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992).  Accordingly, the ALJ did not err in discrediting Claimant's subjective complaints of pain.  See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001)(affirming the ALJ's decision that claimant's complaints of pain were not fully credible based on findings, inter alia, that claimant's treatment was not consistent with amount of pain described at hearing, that level of pain described by claimant varied among her medical records with different

physicians, and that time between doctor's visits was not indicative of severe pain).

B.    Vocational Expert Testimony

Claimant contends that the testimony of the vocational expert did not constitute substantial evidence upon which a determination could be made that Claimant was not disabled arguing only that the expert's opinion is flawed because the hypothetical posed to the expert did not include the stipulation that Claimant be allowed to occasionally stand and walk to alleviate her pain.

After the ALJ has made a finding at step four that the Claimant cannot perform her past work, he moves on to step five in which the burden shifts to the Commissioner to show that jobs exist in the economy that the claimant is able to perform.  The ALJ will consider the claimant's age, education, and past work experience in determining whether such jobs exist.  20 C.F.R.    § 404.1520.  The ALJ may seek the opinion of a vocational expert regarding jobs the claimant can perform.  Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001).  The vocational expert will be asked to respond to a hypothetical question, posed by the ALJ, which includes all of the impairments of the claimant.  The question must "precisely set out the claimant's particular physical and mental impairments."  Leoux v. Schweiker, 732 F.2d 1385, 1388 (8th Cir. 1984).

The ALJ's hypothetical question posed to a vocational expert need not include alleged impairments which the ALJ has rejected as untrue.  Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000); Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997).  There is no objective medical evidence substantiating Claimant's need to be allowed to occasionally stand and walk to alleviate her pain.  See Harris v. Barnhart, 356 F.3d 936, 930 (8th Cir. 2004) (whether there is a need to lie down is a medical question requiring medical evidence; record did not contain any evidence that

medical condition required claimant to lie down for hours each day). Further, the record shows

Claimant never reported to any doctors her need to move around to alleviate her pain. Likewise,

no doctor determined Claimant needed to move around to alleviate her pain as a medical

necessity. Thus, if Claimant's alleged need to move around was not determined to be a medical

necessity by any doctor. See, e.g. Craig v. Chater, 943 F. Supp. 1184, 1188 (W.D. Mo. 1996);

Cf. Harris v. Barnhart, 356 F.3d 936, 930 (8th Cir. 2004) (whether there is a need to lie down is

a medical question requiring medical evidence; record did not contain any evidence that medical

condition required claimant to lie down for hours each day). Further, the ALJ noted how by her

own admission, Claimant is able to engage in a fair range of household chores and activities.

Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("The ALJ may discount subjective

complaints of physical and mental health problems that are inconsistent with medical reports, daily

activities, and other such evidence."); See Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999)

(finding that activities such as driving, shopping, watching television, and playing cards were

inconsistent with the claimant's complaints of disabling pain). As discussed above, the ALJ

properly did not include such a stipulation as a functional restriction to the vocational expert

inasmuch as such stipulation was inconsistent with and not supported by the objective medical

evidence and the other evidence in the record. In addition, the undersigned notes that the ALJ

based his hypothetical questions on medical evidence contained in the record as a whole.

Accordingly, Claimant's claim that the hypothetical opinion given by the vocational expert was

flawed inasmuch as it failed to contain such stipulation should be denied. This claim is without

merit inasmuch as the hypothetical included those impairments the ALJ found credible. A proper

hypothetical must include only those impairments accepted as true by the ALJ. Pearsall, 274 F.3d

at 1220. The ALJ did not include the stipulation and subjective complaints that he properly discredited. Based on a proper hypothetical, the vocational testified that Claimant was able to perform sedentary jobs with no exposure to violent vibration and only occasional bending, stooping, crouching, or crawling such as a sedentary assembler which existed in significant numbers in the local and national economies. The vocational expert's testimony provided substantial evidence to support the ALJ's determination that Claimant could perform a wide range of work at the sedentary exertional level. Therefore, substantial evidence supports the ALJ's determination that Claimant was not disabled. Id.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**.

Judgment shall be entered accordingly.

_____/s/ Terry I. Adelman_____
UNITED STATES MAGISTRATE JUDGE

Dated this  23rd day of March, 2010